**AMERICAN STERILIZER COMPANY, Plaintiff,**

v.

**LOCAL UNION NO. 832, INTERNATIONAL UNION UNITED AUTOMOBILE, AERO-SPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO, Local 38 International Molders & Allied Workers Union, AFL-CIO, District Lodge No. 116, International Association of Machinists, AFL-CIO, Patternmakers League of North America, AFL, Defendants.**

Civ. A. No. 19-67. Erie.

United States District Court
W. D. Pennsylvania.

Jan. 12, 1968.

John E. Britton, Erie, Pa., for plaintiff.

Gerald A. McNelis, Sr., Erie, Pa., Benjamin Sheerer, Cleveland, Ohio, Stephen I. Schlossberg, Detroit, Mich., for U.A. W.

Robert H. Chase, Erie, Pa., for I.M. A.W.

## OPINION

WEBER, District Judge.

The problem posed by this case is unique. Neither counsel nor the court's own research has provided a parallel, yet it would not seem unusual for such a situation to arise in an industrial organization with multiple bargaining units. Courts differ in their conclusions on identical facts, why should not the same be true of arbitrators?

Plaintiff has invoked the Declaratory Judgment Act, 28 U.S.C. § 2201, to seek judicial relief from a dilemma which it poses.

Plaintiff is an employer, which invoked the jurisdiction of this Court under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. Defendants are labor organizations representing employees under collective bargaining agreements with plaintiff, each the exclusive bargaining agency for the specific classes of employees covered by each individual agreement.

All contracts contain a provision governing seniority in identical language:

"Seniority will be governed by length of continuous service and measured in years, months and days as an employee of the Company."

Plaintiff alleges that prior to June 23, 1964, when it signed the agreement with International Union United Automobile Aero-Space and Agricultural Implement Workers of America AFL-CIO [hereafter referred to as U.A.W.] there were four bargaining agencies representing Company employees, and that Company and the four agencies construed and applied the language of the above seniority clause to mean plant-wide seniority. In 1964, U.A.W. was certified to represent certain employees in place of a former union and identical seniority language was incorporated in its agreement.

On April 12, 1965, an employee, Sekula, who was working in a bargaining unit represented by International Molders and Allied Workers Union, AFL-CIO [hereafter referred to as I.M.A.W.] bid on a job opening in the unit represented by U.A.W. Shortly thereafter U.A.W. filed a grievance contending that persons who come from other bargaining units into the U.A.W. unit should not be allowed to retain the seniority acquired in the other units, but should become new employees in the U.A.W. unit. Nevertheless, Sekula was accepted into the U.A.W. bargaining unit without the initiation fee required of new members, and union dues were collected from him. Failing settlement in the steps of the grievance procedure, the matter was submitted to binding arbitration as provided in the contract and the arbitrator sustained the position of the U.A.W. that Sekula started accumulating seniority in the U.A.W. unit from the date of his transfer into that unit. The arbitrator limited this decision to lay-off, recall and job-bidding seniority rights, and expressly held that he did not hold this seniority as determinative of Sekula's seniority rights for fringe benefits, vacations, pensions and other monetary benefits under the U.A.W. contract. The rationale of this exclusion by the arbitrator was that questions as to Sekula's vacation, pension and fringe benefit rights under a claim of plant-wide seniority did not arise out of the U.A.W. contract, and did not affect the job security of U.A.W. unit employees.

Shortly after this decision was rendered, Sekula's former bargaining unit, I.M.A.W., then filed a grievance on behalf of Sekula, claiming that plaintiff company violated the I.M.A.W. contract when it took away Sekula's accumulated seniority upon his transfer to the U.A.W. unit. This proceeded to final binding arbitration with the result that the I.M. A.W. grievance was sustained and the

company was barred from denying Sekula his accumulated plant-wide seniority.

This is plaintiff's dilemma: as employees transfer back and forth between units, seniority changes. In U.A.W. cases, seniority is time in the unit for layoff and call-back, but not for vacations, pension and fringe benefits. In I.M.A.W. cases, plant-wide seniority prevails for all purposes.

Neither the pleadings nor the exhibits attached thereto (the collective bargaining contracts and the arbitrator's decision) show by what right the I.M.A.W. processed a grievance for one no longer a member of its unit. Is the I.M.A.W. decision merely a declaration of Sekula's residual rights should he return to that unit? It appears that it must be so limited in application, and we do not understand that I.M.A.W. now contends otherwise.

■ We must bear in mind that the jurisdiction of this court which plaintiff has invoked is discretionary. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 [1952]. Kerotest Mfg. Co. v. C-O Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 [1952]. This discretion should be exercised where in the Court's sound discretion the interests of justice will be advanced and an adequate and effective judgment may be rendered. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 [1945].

Limiting the discretionary exercise of jurisdiction in cases involving arbitration of disputes arising under collective bargaining agreements is the strong admonition to the courts to be wary of involvement in the arbitration procedures which the parties themselves have selected as the means of resolving their differences.

"It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerning construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Co., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 [1960]

More pertinent is the admonition:

" * * * the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of the arbitrator." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed. 2d 1409 [1960].

There is no allegation here by any party of any procedural irregularity in either of the arbitration processes. Each arbitrator took the issue which was presented to him and made a decision on that issue by interpreting the contract provision involved. Each arbitrator acted on the grievance of a separate exclusive bargaining unit under a separate contract. The terms were identical, the involved employee was identical, the results were different.

"Federal law, fashioned 'from the policy of our national labor laws,' controls. Textile Workers Union [of America] v. Lincoln Mills, 353 U.S. 448, 456, [77 S.Ct. 912, 918, 1 L.Ed. 2d 972]. State law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case, id., [353 U.S.] at 457 [77 S.Ct. 912]. * * * " John Wiley & Sons v. Livingston, 376 U.S. 543, 548, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 [1964].

■ While the Pennsylvania Uniform Arbitration Act of 1927, 5 P.S. § 161 et seq. provides broad grounds for vacation, modification and correction of arbitration awards by the court, it has been held that the provisions of that Act are applicable only if the agreement specifically refers to the Act, or there

is other evidence of agreement of the parties that the Act was to apply. LaVale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569 [3rd Cir., 1967]; Keller v. Local 249, 423 Pa. 353, 223 A.2d 724 [1966]. We find no express agreement or other evidence that the Act was intended to apply. We are thus confined to the more limited judicial powers over common law arbitration as developed in the Federal case law, where an award once rendered is final, except for apparent mistakes, incompleteness or ambiguity. The rationale of the exceptions to finality of federal law arbitration is that the matter of decision on the merits is not taken out of the hands of the arbitrator, it only corrects the patent error or completes the determination. No such defects are claimed here. The arbitrators are the final judges of both the facts and the law and their decision will not be reversed for either a mistake of fact or of law. P. F. Metals Co. v. Hofkin, 420 Pa. 620, 218 A.2d 238 [1966].

Even applying the Federal standards developed after the United Steelworker cases, cit. supra, the power of the Federal Courts over labor arbitration is limited to ordering resubmission to clarify ambiguities. Intern. Ass'n of Mach. AFL-CIO v. Crown Cork & Seal Co., Inc., 300 F.2d 127 [3rd Cir., 1962], Todd Shipyards v. [Indus.] Union of Marine & S. W., 242 F.Supp. 606 [D.N.J.1965], LaVale Plaza, Inc. v. R. S. Noonan, supra. No ambiguity is alleged here.

Nor is there any contention here that the matter be referred back to the arbitrator to determine an unresolved issue. The parties appear to be in agreement that the arbitrators passed upon the grievances as submitted to them. The fact that certain problems remain unresolved is not a question that is properly before the court here. They were not within the scope of the grievance submitted, and if further difficulties arise, the parties are free to continue the method of settlement that they have selected in their respective labor agreements.

Examining the facts of plaintiff's situation at close range, we come to a conclusion that the dilemma it poses is more an administrative headache than the impairment of a vital organ. Each arbitrator's decision must, of necessity, be limited in application to the members of the exclusive bargaining unit which filed the grievance. The U.A.W. arbitrator's decision has no extraterritorial effect beyond those employees embraced in that unit. Sekula was a member of the U.A.W. unit at the time, and under the exclusive bargaining agency principle, his rights are determined by the rights of that unit as expressed in its agreement. These rights have been determined by the arbitrator, apparently in accordance with his unit's contention, although adverse to him personally. To the extent that the arbitrator did not determine his seniority for all purposes, the problem was not within the scope of the grievance submitted. When the problem arises, the arbitration machinery is available to determine it.

The U.A.W. arbitration did not decide Sekula's status with regard to any residual seniority rights which he may have retained under the I.M.A.W. contract. Nor can the I.M.A.W. arbitration decision have any effect on Sekula's job security status while he is a member of the U.A.W. unit. Plaintiff is faced with the same problem that it would face were there two separate bargaining units with differing contract provisions. These observations are compelled on us because the National Labor Relations Act, Section 9[a], 29 U.S.C. § 159[a] provides for exclusive representation of all employees in the bargaining unit by the bargaining agent. While Sekula is in a particular bargaining unit, he is, ipso facto, excluded from any other unit, or from representation by it. N.L.R.B. v. Jones & Laughlin Steel, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 [1937]. His former unit no longer represents him. Modine Manufacturing Co. v. Grand Lodge Intern. Ass'n of Mach., 216 F.2d 326 [6th Cir., 1954].

■ We, therefore, conclude that we are foreclosed from exercise of judicial power to affect the results of the two arbitration decisions here. This matter has come before the court by way of a motion for summary judgment filed by two of the defendants here, U.A.W. and I.M.A.W. Both allege that there is no dispute as to any material issue of fact, both aver that there is no legal reason alleged in plaintiff's complaint for setting aside the respective decisions of the arbitrators in their cases. For the purposes of this motion, the factual allegations raised by plaintiff are admitted by defendants, and on this basis the parties are not contesting any fact issues. The matter may thus be considered as appropriate for summary judgment.

Defendant U.A.W. also pleads a counterclaim asking for enforcement of the U.A.W. arbitration award, and it likewise asks for summary judgment on its counterclaim. The Answer of plaintiff to the counterclaim admits that it has refused to comply with the U.A.W. award, but avers that said award is not based upon the contract between plaintiff and U.A.W.; that it is not in accord with prior practice and is in conflict with the I.M.A.W. award.

■■ Under this set of undisputed facts and in accordance with the conclusions set forth herein, it appears that defendant U.A.W. is entitled to enforcement of its arbitration award by summary judgment. The jurisdiction of this court over suits arising out of collective bargaining agreements is settled by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. This includes the power to order specific performance of an agreement to arbitrate. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912 [1957], United Eng. & Foundry Employees Ass'n Independent Union v. United Eng. & Foundry Co., 389 F.2d 479 [3rd Cir., December 19, 1967], and to order compliance with an arbitrator's award. Kornman Co. v. Amalgamated Clothing Workers, 264 F.2d 733 [6th Cir., 1959], Textile Workers Union of America v. Cone Mills Corp., 268 F.2d 920 [4th Cir., 1959].